In re Ronald E. WATSON, and Terri
Louise Watson, Debtors.

LEADERSHIP BANK, N.A., a National
Banking Association, Appellee,

v.

Ronald E. WATSON, an individual,
Appellant.

No. 91–6222.

United States Court of Appeals,
Tenth Circuit.

March 3, 1992.

Matthew L. Standard, Kirk & Chaney,
Oklahoma City, Okl., for appellee.

Kenneth G. Mayfield, Oklahoma City,
Okl., for appellant.

Before MOORE, TACHA, and BRORBY,
Circuit Judges.

BRORBY, Circuit Judge.

Ronald E. Watson (Debtor) appeals the
district court's decision affirming the bank-
ruptcy court's determination that Debtor's
loan obligation owed to Leadership Bank
(Bank) was a nondischargeable debt under
11 U.S.C. § 523(a)(2)(B).[1]  Section 523 pro-
vides that a debt is nondischargeable if the
debt is

> (2) for money, property, services, or an
> extension, renewal, or refinancing of
> credit, to the extent obtained by—
>
> ....
>
> (B) use of a statement in writing—
> (i) that is materially false;

---

1. After examining the briefs and appellate
record, this panel has determined unanimously
that oral argument would not materially assist
the determination of this appeal.  *See* Fed.
R.App.P. 34(a); 10th Cir.R. 34.1.9.  The case is
therefore ordered submitted without oral argu-
ment.

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive....

11 U.S.C. § 523(a)(2)(B).

The sole issue presented by this appeal is whether the Bank reasonably relied upon Debtor's false financial statement in making Debtor an unsecured loan in the amount of $10,000. The question of whether the Bank's reliance upon Debtor's financial statement was reasonable is a factual determination which this court will disturb only if clearly erroneous. *See First Bank v. Mullet (In re Mullet)*, 817 F.2d 677, 678–79, 681 (10th Cir.1987). Upon careful consideration of the record and the parties' arguments, we affirm the bankruptcy and district courts' determination that the Bank's reliance on the false financial statement was reasonable.[2]

"[The] standard of reasonableness places a measure of responsibility upon a creditor to ensure that there exists some basis for relying upon debtor's representations.... [T]he reasonableness of a creditor's reliance will be evaluated according to the particular facts and circumstances present in a given case." *In re Mullet*, 817 F.2d at 679. In evaluating a creditor's reliance on a false financial statement, a court may not substitute its judgment for the business judgment of the creditor in deciding to make the loan. *See*

*id.* at 681–82. Further, the debtor's dishonesty will not excuse a creditor's unreasonable reliance on a false financial statement. *Id.* at 682.

The bankruptcy court made the following findings of fact, which are supported by the record:[3] Debtor accepted a position as assistant athletic director at the University of Oklahoma in April 1988. Through his association with the University, Debtor became acquainted with Jack Cooper, a local businessman. Debtor had known Mr. Cooper for about one year when Debtor inquired of Mr. Cooper concerning where Debtor might obtain a loan for approximately $10,000. In response, Mr. Cooper, who was a well-respected customer of the Bank, introduced Debtor to officials at the Bank.

Debtor met with the Bank's president on May 11, 1989, to discuss the possibility of a loan. Prior to this meeting, the Bank's president had verified Debtor's position at the University. Debtor explained to the Bank's president that he needed a loan of approximately $10,000 to help pay his daughter's college tuition. Although Debtor asserted he had no collateral with which to secure the loan, he explained that he would be able to repay the note either through the sale of football tickets to which he had access at the University or through his former wife's contribution of one-half of his daughter's tuition.

At the request of the Bank's president, Debtor filled out a financial statement, listing an annual income of $55,000 and current liabilities of $3,700. In completing this financial statement, Debtor omitted ap-

---

**2.** The bankruptcy court required the Bank to establish the nondischargeability of Debtor's loan obligation by clear and convincing evidence. Following the bankruptcy court's determination, the United States Supreme Court held that a creditor need only establish the nondischargeability of a debt by a preponderance of the evidence. *Grogan v. Garner*, —— U.S. ——, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Because we determine that the Bank met its burden under either standard, *Grogan* does not affect the resolution of this appeal.

**3.** In addition to arguing that the Bank's reliance upon Debtor's financial statement was unreasonable, Debtor also appears to challenge the

bankruptcy court's factual determination that the Bank did in fact rely upon the financial statement in deciding to make Debtor the $10,000 loan. We agree with the district court that evidence in the record supports the bankruptcy court's determination that the Bank did rely upon the financial statement in making Debtor the loan and, therefore, that factual finding was not clearly erroneous. *See generally Central Nat'l Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895, 897–98 (10th Cir.1986) (§ 523(a)(2)(B)'s reliance requirement is satisfied if in making the loan the lender relied, in part, on financial statement).

proximately $75,000 in current debts. Debtor also indicated on the financial statement that he had not had any legal judgments entered against him, although he had in fact suffered a $2,000 judgment.

The Bank president briefly went over Debtor's financial statement with Debtor, although the president failed to notice that Debtor had not signed the financial statement. The president did not make any further attempt to verify the information in the financial statement, but instead extended the $10,000 loan to Debtor that same day, May 11, 1989. The note, which required repayment through a single payment, came due in October 1989. Debtor failed to repay the loan. The Bank agreed to renew the note upon Debtor's payment of the accrued interest. Although Debtor tendered a check to cover the accrued interest, that check was written on a closed account.

Debtor and his wife jointly filed for bankruptcy relief in December 1989. The Bank commenced this adversary proceeding, seeking to prevent the discharge of Debtor's $10,000 loan obligation to the Bank under 11 U.S.C. § 523(a)(2)(B), asserting Debtor obtained the loan through the use of a materially false financial statement. Following an evidentiary hearing, the bankruptcy court initially determined that the debt was dischargeable, ruling that, although the Bank had established all other necessary requirements under § 523(a)(2)(B) for nondischargeability, the Bank had failed to establish that its reliance upon the financial statement was reasonable. After considering the Bank's motion for reconsideration, however, the bankruptcy court determined that the Bank had established the reasonableness of its reliance on the financial statement. The bankruptcy court, therefore, determined that Debtor's $10,000 debt was nondischargeable. Debtor appealed to the district court, which affirmed.

On appeal to this court, Debtor asserts that the bankruptcy court erred in determining that the Bank's reliance on the financial statement was reasonable, in light of the Bank's failure to take any independent measures to verify any of the information in Debtor's financial statement. In *Mullet,* this court identified several factual situations in which courts have deemed a creditor's reliance on a debtor's representations to be reasonable, even though the creditor failed to take steps to verify the information. *Id.* at 681; *see Arkansas Aluminum Alloys, Inc. v. Hicklin (In re Hicklin),* 121 B.R. 65, 67–68 (D.Kan.1990). Included among those situations are cases in which the debtor and the creditor have an ongoing relationship and cases where the financial statements failed to indicate that further investigation was necessary. *In re Mullet,* 817 F.2d at 681 (citing *Northern Trust Co. v. Garman (In re Garman),* 643 F.2d 1252 (7th Cir.1980), *cert. denied,* 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981), and *Carini v. Matera,* 592 F.2d 378 (7th Cir.1979)).

In the case at issue in this appeal, Debtor was a new customer of the Bank. In fact, Debtor had moved to Oklahoma from Louisiana in April 1988, only one year before obtaining the loan from the Bank. Nonetheless, Debtor was introduced to the Bank by Mr. Cooper, a known customer who had an ongoing relationship with the Bank. Further, although Debtor did not request that Mr. Cooper guarantee the loan, uncontested testimony at the evidentiary hearing indicated the Bank president conferred with Mr. Cooper before approving the loan and that, during that conversation, Mr. Cooper verbally agreed to guarantee the loan. This testimony was supported by the undisputed fact that Mr. Cooper executed a written guaranty of Debtor's loan several days after the loan was made.

Under these circumstances, although Debtor was a new customer, the Bank's reliance on Debtor's financial statement was not unreasonable, despite the Bank's failure to verify the information in the financial statement, in light of the guarantor's ongoing relationship with the Bank. *Cf. Jordan v. Southeast Nat'l Bank (In re Jordan),* 927 F.2d 221, 225–26 (5th Cir. 1991) (Bank's failure to order credit report to verify debtors' financial statement did not make bank's reliance on statement unreasonable when, among other things, debt-

ors, with whom bank was unfamiliar, were accompanied by regular and well-known bank customer and purpose of loan was for debtors' purchase of real property from that bank customer).

Further, there was nothing in the financial statement which should have alerted the Bank that further investigation was necessary. The financial statement did not contain any inconsistent information, nor did it contain any noticeable discrepancies which would have alerted the Bank that the financial statement might be inaccurate or incomplete.

The facts addressed by this court in *In re Mullet*, 817 F.2d 677 (10th Cir.1987), in which this court determined a bank's reliance on a debtor's false financial statement was unreasonable, is distinguishable from the case at issue here. In *Mullet*, the twenty-three-year-old debtor was a new customer of the lending bank, with no other connection to the bank. *Id.* at 680–81. The bank in *Mullet* did obtain a credit report, which indicated inconsistencies and omissions in the debtor's financial statement. *Id.* at 680. Despite those inconsistencies, the bank failed to conduct any further investigation. *Id.* In particular, the bank failed to take any steps to verify the existence of a $130,000 certificate of deposit in a Swiss bank, the existence of which the bank relied upon to make the loan. *Id.* Further, the bank failed to investigate the stock certificates with which the debtor secured the loan. *Id.* at 680–81. This court noted that the bank could have uncovered the debtor's misrepresentations with minimal investigation. *Id.* at 681. Under those circumstances, this court determined that the bankruptcy court's finding of the lack of reasonable reliance on the debtor's financial statement was not clearly erroneous. *Id.*

Unlike the situation in *Mullet*, "red flags" which would have alerted the Bank that further investigation was required were not present in this case. Although Debtor was a new Bank customer, he was introduced to the Bank by one of the Bank's known customers. That customer agreed to guarantee Debtor's loan. Fur-

ther, Debtor's financial statement, on its face, failed to indicate any inconsistencies or omissions in the information provided by Debtor.

Under these circumstances, the Bank's reliance upon Debtor's false financial statement was reasonable. The judgment of the United States District Court for the Western District of Oklahoma affirming the bankruptcy court's determination that Debtor's debt owed to the Bank is nondischargeable, therefore, is AFFIRMED.