**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-7045
Summary Calendar

IN THE MATTER OF:  JAMES S. YOUNG, DEBTOR.

JAMES S. YOUNG,

Appellant,

versus

NATIONAL UNION FIRE INSURANCE CO.
OF PITTSBURGH, PA.,

Appellee.

Appeal from the United States District Court
For the Southern District of Texas

(                June 29, 1993                )

Before POLITZ, Chief Judge, DAVIS and JONES, Circuit Judges.

POLITZ, Chief Judge:

James S. Young appeals the district court affirmance of the bankruptcy court's ruling that his debt to National Union Fire Insurance Co. of Pittsburgh, Pa. was nondischargeable.  National Union cross-appeals the vacating and remand of an award of attorney's fees.  We affirm in part and reverse in part.

## Background

Young's indebtedness to National Union arises from his investment in a Texas limited partnership known as Emerald Park Apartments, Ltd. (the "Partnership"). To purchase his interest, Young executed a promissory note to the Partnership in the principal amount of $92,500. To secure payment of their notes Young and other Partnership investors applied to National Union for a financial guarantee bond.

National Union required Young to execute the following documents: an "Investor Application -- Financial Guarantee Bond for Limited Partnerships," an "Indemnification and Pledge Agreement," and a supplemental application which stated that there had been no material adverse change in his financial condition and that the financial information previously submitted remained true and correct. Young attached a financial statement to his application. On the strength of this data, National Union issued the requested bond.

Young defaulted on the note. National Union paid the defaulted note and looked to Young for indemnity, securing a state court judgment against him. Young filed for bankruptcy.

National Union asked the bankruptcy court for an order that Young's debt was nondischargeable under 11 U.S.C. § 523(a)(2)(B) because it was based on a materially false written statement of Young's financial condition. Following a trial, the bankruptcy court found the debt nondischargeable and awarded National Union $6,125 in attorney's fees. Young appealed to the district court,

challenging the nondischargeability determination and the bankruptcy court's factual conclusions that he had made intentional misrepresentations and that National Union reasonably had relied upon them. He also appealed the award of attorney's fees. The district court affirmed the nondischargeability and vacated and remanded for additional findings on the attorney's fees. Young and National Union appeal the district court's judgment.

## Analysis

### Standard of Review

A bankruptcy court's findings of fact are subject to the clearly erroneous standard of review and will be reversed only if, considering all the evidence, we are left with the definite and firm conviction that a mistake has been made.[1] Strict application of this standard is particularly appropriate when the district court has affirmed the bankruptcy court's findings.[2] We are particularly mindful of "the opportunity of the bankruptcy court to judge the credibility of the witnesses."[3] Conclusions of law, of course, are reviewed *de novo*.[4]

---

[1] **In re Allison**, 960 F.2d 481 (5th Cir. 1992).

[2] **Wilson v. Huffman (In re Missionary Baptist Found. of Am.)**, 818 F.2d 1135 (5th Cir. 1987).

[3] Bankr. Rule 8013.

[4] **Allison**.

3

<u>Nondischargeability</u>

A debt may be nondischargeable in bankruptcy under 11 U.S.C. § 523(a)(2)(B):

> (2)  . . . to the extent obtained by --
> (B)  use of a statement in writing --
>     (i)  that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;
>     (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>     (iv) that the debtor caused to be made or published with intent to deceive[.]

The burden is on the creditor to prove, by a preponderance of the evidence, that the debt is nondischargeable.[5]

Admitting that much of the financial information submitted to National Union was false, Young contends that he did not make those false representations. He testified that he filled out an application and submitted it to the Partnership, but someone else substituted false information in the application which was submitted to National Union.[6] He also contends that, although it is in his handwriting, he did not give the Partnership the financial statement included with the application; he claims a complete lack of knowledge about how the financial statement got into the packet of materials.

The bankruptcy court, after hearing several hours of

_____

[5] **Grogan v. Garner**, 498 U.S. 279 (1991).

[6] He contends that, with the exception of the last page containing his signature, the rest of the document received by National Union was prepared by someone else and substituted for the information he submitted.

testimony, found: "I find not credible Mr. Young's claim that he did not do most of the pages which are in [the application], and did not cause them to be delivered to National Union." The district court found that this finding was not clearly erroneous. Our review of the trial testimony persuades that the bankruptcy court's finding was not clearly erroneous.[7] Having determined that Young submitted false financial information, his "intent to deceive may be inferred from use of a false financial statement to obtain credit."[8]

Young also challenges the bankruptcy court's finding that National Union reasonably relied on his financial information. We recently have determined that the reasonableness of a creditor's reliance, for purposes of section 523(a)(2)(B), is a question of fact subject to review only for clear error.[9] The bankruptcy court received uncontroverted testimony that the relevant practice in the industry was to rely solely on the documentation presented by the

---

[7] Young contends that the bankruptcy court improperly relied upon inconsistencies between his trial testimony and testimony about the application documents given at a deposition in 1988. In the 1988 deposition, Young offered explanations for information on the application which he now disavows ever having made. He asserts that because he was uncounseled when he gave the deposition, the court should not have relied on that testimony. There is no rubric requiring a court to ignore sworn prior inconsistent testimony simply because it was uncounseled; we decline to create one. The bankruptcy court, having heard all the testimony, was in the best position to evaluate Young's credibility and we find no clear error in that credibility assessment.

[8] **In re Pryor**, 93 B.R. 517, 518 (Bankr. S.D.Tex. 1988).

[9] **In re Coston**, 991 F.2d 257 (5th Cir. 1993) (*en banc*).

applicant. Whether a creditor's reliance is reasonable is to be determined from the totality of the circumstances.[10] The only purportedly questionable circumstance Young points to is the existence of whiteouts and handwritten additions to the financial statement, most of which was typed. This is not such a "red flag" as to invoke a duty to investigate. All things considered, we are not left with the definite and firm conviction that the bankruptcy court made a mistake in finding that National Union reasonably relied on the financial information in Young's application, or in its ultimate conclusion that Young's debt was nondischargeable.

Attorney's Fees

The bankruptcy court awarded National Union $6,125 in attorney's fees based upon the indemnity agreement provision that the debtor would be liable therefor. The district court vacated that award and remanded for additional fact findings required by New York law.[11]

Under New York law, when a contract provides for attorney's fees, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable."[12] The court's determination

---

[10] **Coston.**

[11] The indemnity agreement provided that the rights and liabilities of the parties thereunder were to be determined under New York law.

[12] **F.H. Krear & Co. v. Nineteen Named Trustees**, 810 F.2d 1250, 1263 (2d Cir. 1987).

whether the fees requested are reasonable is informed by various factors, including: "the difficulty of the questions involved; the skill required to handle the problem; the time and labor required; the lawyer's experience, ability and reputation; the customary fee charged by the Bar for similar services; and the amount involved."[13]

National Union's attorneys estimated their expenses to be $30,000. They presented evidence of the time and various types of work performed in this litigation, as well as evidence about their general level of experience. Thereafter, the bankruptcy court made the following findings:

> I'm taking an extremely conservative view of the attorneys' fees which might be appropriate in this case.
>
> Noting that the amount of time spent with regard to participation in this trial will clock in at a minimum of about ten hours, including the activity yesterday and today. And granting twenty-five hours for preparation, which I believe to be low, considering the extremely high degree of preparation exhibited by the plaintiffs in this case, but again taking a conservative view.
>
> And conservatively allowing $175 per hour. I am familiar with attorneys' rates in this region and in the bankruptcy field, and believe that to be a reasonable if somewhat low hourly fee to be awarded for the degree of competence, which was high, exhibited by plaintiff's counsel in this case.
>
> This yields a total amount of $6125.

We find that this reflects sufficient consideration of the factors required under New York law. In fact, the bankruptcy court's approach mirrors the "lodestar" method approved in **Krear** -- "the hours reasonably spent by counsel, as determined by the Court,

---

[13] **Id.** (quoting **In re Schaich**, 391 N.Y.S.2d 135, 136 (2d Dept.), appeal denied, 397 N.Y.S.2d 1026 (1977)).

[are] multiplied by the reasonable hourly rate."[14] The determination that $6,125 is a reasonable attorney's fee was not clearly erroneous.

For the foregoing reasons, we AFFIRM the determination of nondischargeability, REVERSE the order regarding attorney's fees, and REINSTATE the bankruptcy court's award of attorney's fees in the amount of $6,125.

---

[14] **Id.** (quoting **Zauderer v. Barcellona**, 495 N.Y.S.2d 881, 882-83 (Civ.Ct. 1985)).